MASSACHUSETTS CASUALTY
INSURANCE COMPANY,
Plaintiff,

v.

Lowell A. **RENSTROM,** Defendant.

No. 93 Civ. 1491(PNL).

United States District Court,
S.D. New York.

Sept. 22, 1993.

Chorpenning, Good, Carlet & Garrison, New York City, (Michael J. Zaretsky, Allan R. Jacobs, of counsel), for plaintiff.

Lowell A. Renstrom, pro se.

*OPINION AND ORDER*

LEVAL, District Judge.

Plaintiff Massachusetts Casualty Insurance Company (hereinafter "Insurer") moves for a preliminary injunction to bar defendant Lowell Renstrom from bringing any action pertaining to a disability insurance contract

between the parties in small claims court until this court decides a dispute between the parties over the benefits due the defendant under the contract. Defendant challenges the court's jurisdiction to hear the case and argues that the plaintiff does not meet the requisites for a preliminary injunction.

## Background

Lowell Renstrom holds a disability benefits policy with Massachusetts Casualty Insurance Company. The policy pays benefits for disability resulting from sickness for 30 months, and for disability resulting from accident for life.

In June 1990, Renstrom became totally disabled from a knee injury. The Insurer and Renstrom disagree over how this injury should be classified. Insurer considers it the result of a "degenerative disease of the knee," and thus paid 30 months of benefits under the "sickness" prong of the disability policy. The final payment was made December 3, 1992. Renstrom maintains that he suffers from an "accidental" injury, caused by repetitive stress of the knee. Accordingly, after receiving the final payment from the Insurer, Renstrom brought an action in the Kings County Small Claims Court for one month's benefits, claiming entitlement to continuing benefits under the "accident" prong of the policy. The small claims judge ruled in his favor, finding that the "events which injured claimant ... constitute an accident." Judgment, Jan. 28, 1993.

The Insurer filed a complaint on March 11, 1993 for declaratory judgment to the effect that Renstrom's disability is the result of a sickness, not an accident, and that the Insurer has satisfied its obligations under Renstrom's policy. Renstrom's answer to the complaint challenges this court's jurisdiction and in the alternative brings counterclaims alleging breach of contract and demanding declaratory relief and exemplary and punitive damages.

On April 1, 1993, after answering Insurer's complaint in this court, Renstrom brought a second small claims court action against the Insurer in Kings County for $2,000, claiming this amount is due him under the disability policy.[1] On May 4th the Insurer obtained an Order to Show Cause seeking to enjoin Renstrom preliminarily from pursuing the April 1st or any other action against the Insurer until the Insurer's previously filed claim has been adjudicated.

## Discussion

I. As to any state court action Renstrom has instituted prior to this decision, the Insurer's motion is easily denied. The Anti–Injunction Act, 28 U.S.C. § 2283, bars a United States court from enjoining proceedings in a state court "except as expressly authorized by Act of Congress or where necessary in and of its jurisdiction or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The exceptions are not present here. Enjoining the small claims actions is not necessary in aid of this court's jurisdiction or to protect or effectuate its judgments. *See Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972) ("[P]rinciples of equity, comity, and federalism ... must restrain a federal court when asked to enjoin a state court proceeding.").

Indeed, New York's law limits the *res judicata* effect of a small claims judgment to the amount involved in the particular action and prevents use of that adjudication to determine facts in any other case. N.Y.Jud. Cts. Act § 1808 (McKinney 1989). The Insurer therefore runs no risk that facts hastily determined in the small claims jurisdiction will undermine its right to have its future liability determined in the federal court.

With respect to actions not yet brought by Renstrom, the Anti–Injunction Act is not a bar, by reason of a further exception created by court decision in *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1965). There, the Act was held inapplicable to federal injunctions issued prior to the institution of the state court

---

1. The Insurer advises by letter dated July 27, 1993, that the Small Claims Court judge heard Renstrom's action on July 8 and subsequently dismissed it. According to the Insurer, Renstrom subsequently filed a third Small Claims action.

action. *See In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985).

■ As to such future actions, therefore, the question is whether the Insurer has shown entitlement, according to the traditional standards, to a preliminary injunction. This turns on whether the moving party has shown irreparable harm and either likelihood of success on the merits or serious questions going to the merits and a balance of hardships tipped decidedly in its favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979).

In my view, the Insurer fails to meet this standard. That the Insurer may be obliged to defend a few small claims actions for small sums, pending resolution of the major claim, does not show irreparable harm. Indeed, with respect to the second branch of the *Jackson Dairy* test, it appears that the harm to Renstrom from being enjoined exceeds the harm suffered by the Insurer. Nor has the Insurer shown likelihood of success on the merits. In short, for several reasons the Insurer fails to satisfy the preliminary injunction test.

■ II. Renstrom furthermore questions the Court's jurisdiction, claiming that the jurisdictional amount, of $50,000 for a diversity action, is not met. The action contests whether the Insurer is obliged to make monthly payments of $500 to Renstrom for the remainder of his life. One hundred monthly payments, to be achieved in eight years and one-third years, would meet the jurisdictional amount. It appears Renstrom is 59 years old and has a statistical life expectancy exceeding 8⅓ years.

Statistically expected future payments exceed $50,000. Defendant, however, argues that his receipt of future benefits is too speculative to support jurisdiction.

The parties' briefs on this issue fail to point to any binding authority on whether future benefits payable may be considered in calculating the jurisdictional amount. One case from the Seventh Circuit, cited by the Insurer (though seemingly more helpful to Renstrom) provides, "Future benefits payable under a contract of insurance may be used to compute the sum in controversy for jurisdictional purposes only when the validity of the insurance policy itself, and not merely the presence. or absence of conditions measuring the insurer's liability thereunder, is the matter in dispute." *Keck v. Fidelity & Casualty Co. of N.Y.,* 359 F.2d 840, 841 (7th Cir.1966). If *Keck* were the rule in this circuit, there would appear to be no jurisdiction.

*Keck,* however, has never been adopted by the Second Circuit, and while this Court is unaware of any Second Circuit cases deciding the precise question of future insurance benefits, it appears the Circuit generally takes a broader view of what is sufficient to establish a jurisdictional amount. The Circuit has held that in determining the amount in controversy for federal question jurisdiction under the former version of 28 U.S.C. § 1331, "absolute certainty in valuation of the right involved is not required to meet the amount in controversy requirement" and "courts should dismiss only when it is clear to a legal certainty that jurisdictional amounts cannot be met." *Moore v. Betit,* 511 F.2d 1004, 1006 (2d Cir.1975) (footnotes omitted). In this Circuit, the proposition that damages are too "speculative" to support jurisdiction has "traditionally been applied to damages which are intangible or to damages incapable of reduction to monetary terms such as free speech, child custody and loss of personal liberty." *Id.* (concerning measure of damages under 28 U.S.C. § 1331); *cf. Kheel v. Port of N.Y. Authority,* 457 F.2d 46, 49 (2d Cir.1972). The amount in controversy formerly required under § 1331 has been held to have been met by expected future pension payments, *Tron v. Condello,* 427 F.Supp. 1175 (S.D.N.Y.1976), and the jurisdictional amount for § 1332 has been met on the basis of shareholder dividends that could be anticipated if plaintiffs succeeded in their effort to force a defendant corporation to reinvest certain monies, *Burton v. Exxon Corp.,* 536 F.Supp. 617 (S.D.N.Y.1982). Given these precedents, and the statistical likelihood that Renstrom will live long enough so that payments will exceed $50,000, I cannot say at this point that this Court lacks jurisdiction over this controversy.

*Conclusion*

Plaintiff's motion for a preliminary injunction is denied.

SO ORDERED.